UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNA SABATTINI,

      Plaintiff,

v.                                      Case No. 8:19-cv-2613-T-30CPT

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Supplemental Security Income (SSI).  For the reasons discussed below, I respectfully recommend that the Commissioner's decision be reversed and the case be remanded.

I.

The Plaintiff was born on October 15, 1963, has a limited education, and has no past relevant work experience.  (R. 26–27, 41).  In June 2016, the Plaintiff applied for SSI alleging disability as of October 1, 2015, due to issues with her back, right knee, right hip, and left shoulder, as well as problems walking.  (R. 79, 92, 255, 286).  The

Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 122, 133).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on May 2, 2018.  (R. 35–68).  The Plaintiff was represented by counsel at that hearing and testified on her own behalf.  *Id.*  A vocational expert (VE) also testified.  *Id.*

On June 15, 2018, the ALJ issued a partially favorable decision, finding that the Plaintiff: (1) had not engaged in any substantial gainful activity since her alleged onset date of October 1, 2015; (2) had the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee and right shoulder, and osteoarthritis of the right hip and left shoulder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; and (4) had the residual functional capacity (RFC) to perform a limited range of light work;[1] and (5) based on the VE's testimony, could not engage in her past relevant work but could perform other occupations that exist in

---

[1] In particular, the ALJ found the Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could sit up to six hours per day; could stand/walk up to six hours per day; could occasionally balance, stoop, kneel, crouch, crawl, as well as climb ramps and stairs; could frequently reach, handle, finger, and feel with her left upper extremity and occasionally reach, handle, finger, and feel with her right upper extremity; could not climb ladders, ropes, or scaffolds; and must avoid extreme temperatures, wetness, vibration, hazardous machinery, and unprotected heights.  (R. 23–24).

significant number in the national economy up until April 15, 2018, after which time she was disabled.  (R. 20–28).

On review, the Appeals Council considered additional evidence tendered by the Plaintiff and modified the ALJ's decision in part to adjust the period for the Plaintiff's established disability to commence on the date on which the ALJ issued his decision— i.e., June 15, 2018.  (R. 1–10).  The ALJ's decision, as revised by the Appeals Council, thus became the final decision of the Commissioner.

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r*

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

*of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[3]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience.  *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).  In evaluating whether substantial evidence supports the Commissioner's decision, the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence.  *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (per curiam) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).  "[W]hile the court reviews the Commissioner's decision with deference to [his] factual findings, no such deference is given to [his] legal conclusions."  *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  "Nevertheless, '[r]emand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.'"  *Goode*, 966 F.3d at 1280 (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

5

III.

The Plaintiff raises three challenges on appeal: (1) the Appeals Council improperly modified the Plaintiff's established disability onset date from April 15 to June 15, 2018; (2) the ALJ failed to pose a complete hypothetical question to the VE that accounted for all of the Plaintiff's physical and mental limitations; and (3) the ALJ's step-five determination regarding the number of jobs available to the Plaintiff is unsupported by substantial evidence.  (Doc. 18).  At the Court's direction (Doc. 19), the parties provided supplemental briefing to address the applicability of the Eleventh Circuit's recent published opinion in *Goode*, *supra*, to the Plaintiff's third claim of error (Docs. 20, 22).  The matter is now ripe for adjudication.

A.

I begin my analysis with the Plaintiff's third claim of error, which I find to be dispositive of her appeal.  As noted above, at step five of the sequential evaluation process, the burden of proof temporarily shifts to the Commissioner "to show that 'there is other work available in significant numbers in the national economy that the claimant is able to perform'" despite her impairments.  *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. § 416.960(c) ("[T]o support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do . . . ").  Work is deemed

6

to meet this threshold if it "exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." *Goode*, 966 F.3d at 1280 (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(a) (same)).

To carry his burden at step five, the Commissioner may "take administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles (DOT).  20 C.F.R. § 416.966(d).  The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require."  *Washington*, 906 F.3d at 1357 n.2.  "The DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number."  *Goode*, 966 F.3d at 1281.

The problem—as *Goode* highlights—is that the DOT codes "do not provide statistical information about the number of jobs available in the national economy." *Id*.  Instead, other sources like the Occupational Employment Quarterly (OEQ) must be consulted to locate employment figures.  *Id*.  Unfortunately, the OEQ database "does not compile data by DOT codes, but rather through the Standard Occupational Classification (SOC) system," which "groups together detailed occupations with similar job duties."  *Id*.  "As a result, a single SOC group may contain multiple DOT occupations."  *Id*.  The Bureau of Labor Statistics has provided some assistance in

7

correlating the SOC and DOT systems by "publish[ing] a crosswalk which provides the corresponding SOC group code for each DOT occupation." *Id.*

In addition to the DOT and other sources set forth in the Regulations, the Commissioner may predicate his decision at step five on information supplied by a VE. *Id.* at § 416.966(e); *Phillips*, 357 F.3d at 1240. "A [VE] is an expert on the kinds of jobs an individual can perform based on [the individual's] . . . capacity and impairments." *Phillips*, 357 F.3d at 1240. "When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id.* In rendering an opinion, a VE "may consult a publication like the DOT," *Goode*, 966 F.3d at 1281, or she may "rely on [her] knowledge and expertise." *Griffin v. Comm'r of Soc. Sec.*, 2018 WL 3352929, at *10 (M.D. Fla. June 20, 2018) (citing *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012)), *report & recommendation adopted*, 2018 WL 3344535 (M.D. Fla. July 9, 2018). An ALJ may, in turn, base his step-five determination solely on the VE's testimony. *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

Irrespective of whether the ALJ relies exclusively on the VE, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be

supported by substantial evidence, not mere intuition or conjecture." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).  The Supreme Court has declined to impose a categorical rule delineating when a VE's job estimates qualify as "substantial evidence."  *Biestek*, 139 S. Ct. at 1154, 1157.  Rather, as the Court emphasized in *Biestek*, the determination as to whether a VE's testimony is sufficient is to be conducted on a case-by-case basis.  *Id.* at 1157.

Following *Biestek*, the Eleventh Circuit issued its opinion in *Goode*, in which it addressed the adequacy of the VE's job numbers for the one occupation—bakery worker—that the VE concluded the claimant in that case could perform.  Upon review of the record, the court in *Goode* found the VE's testimony flawed in two respects.  Not only did the VE use the wrong SOC group code, but the VE also "substantially overstated" the number of available bakery worker jobs that existed in the national economy.  966 F.3d at 1281–82.  Of significance to the instant action, the court noted with respect to the latter error that the VE "testified that there were 43,000 bakery worker jobs nationally and 1,000 regionally;" that the numbers from the SOC group upon which the VE relied, however, were "aggregate numbers for 65 separate DOT codes;" and that the claimant "was only capable of performing the job for only one of those DOT codes—that of bakery worker."  *Id.* at 1283 (internal citation omitted).  The Eleventh Circuit reasoned:

> Simple common sense makes it is impossible to say, based on the
> existence of 43,000 jobs nationally and 1,000 jobs regionally for a group

> of 65 occupations, that all of those jobs exist for just one of those occupations.  If the [VE] were right, that would mean that there are no available jobs (nationally or regionally) for the other 64 occupations in SOC [group].  Assuming such an improbable state of affairs were statistically or realistically possible, the [VE] did not provide any support (empirical or otherwise) to justify that quantum leap.

*Id.*  Accordingly, the court concluded that reversal was required and that, on remand, the VE must "figure out the total number of jobs available in [the] SOC [group], and determine how many DOT codes are indeed in that SOC group.  From there, the [VE] must estimate the number of available jobs for bakery workers, and provide some explanation for how he arrived at that latter number."  *Id.* at 1284.

Here, in response to the ALJ's hypothetical question at the hearing, the VE opined that an individual with the Plaintiff's age, education, past work experience, and RFC could perform three different jobs: Usher, DOT #344.677-014; Furniture Rental Clerk, DOT #295.357-018; and Hostess, DOT #349.667-014.  (R. 65).  The VE also stated that the approximate number of available positions for each of these occupations was 200,000, 250,000, and 400,000, respectively.  *Id.*

During subsequent questioning by Plaintiff's counsel, the following exchange occurred:

> Counsel:   And in terms of your numbers, have you made any reductions based on the limitations set forth in the judge's hypotheticals?
>
> VE:       No.

| | |
|---|---|
| Counsel: | And are your numbers DOT-specific or are they for a classification of occupations? |
| VE: | They are from a classification. |
| Counsel: | So like an OES [Occupational Employment Statistics] statistical group?[4] |
| VE: | Yes. |

(R. 66–67).

In his decision, the ALJ adopted the VE's testimony, finding that prior to April 15, 2018, the Plaintiff could engage in the occupations identified by the VE and that those positions existed in the numbers attested to by the VE.  (R. 28).  The ALJ, however, did not address the VE's testimony that she based her job estimates on OES statistical groups.

Although the Plaintiff does not dispute the VE's expertise, she now argues that the VE's testimony fails to substantiate the ALJ's step-five finding.  (Doc. 18 at 26–29).  In support of this argument, the Plaintiff asserts that the VE's job numbers are not relevant to the particular DOT occupations the VE identified but rather are based on the larger OES classifications.  *Id.*  As the Plaintiff notes, the position of Usher is

---

[4] The OES "program produces employment and wage estimates annually for over 800 occupations . . . for the nation as a whole, for individual states, and for metropolitan and nonmetropolitan areas." OES, U.S. Bureau of Labor Statistics, https://www.bls.gov/oes/#data.  The OES program in turn relies upon the SOC system, which—as alluded to above—groups together those occupations that have "similar job duties, and in some cases skills, education, and/or training."  SOC, U.S. Bureau of Labor Statistics, https://www.bls.gov/soc/.

part of the OES group 39-3031, which contains five DOT jobs; the position of Furniture Rental Clerk is part of the OES group 41-2021, which consists of twenty-four DOT jobs; and the position of Hostess is part of the OES group 39-9099, which includes eighteen DOT jobs.  *Id.* at 27–28; *see also* (Docs. 18-1, 18-2, 18-3).

I agree with the Plaintiff and find that the VE's testimony does not constitute an adequate basis for the ALJ's determination that, in light of the Plaintiff's RFC and other factors, there are a significant number of jobs in the national economy that the Plaintiff can perform.  Akin to the situation in *Goode*, the ALJ's reliance on the VE's job estimates is flawed because the VE "failed to take the additional step of testifying about approximately how many jobs in the [OES statistical group] were the specific jobs the VE opined the hypothetical person could perform."  *Langer ex rel. Langer v. Comm'r of Soc. Sec.*, 2020 WL 5124957, at *12 (M.D. Fla. Aug. 14, 2020), *report & recommendation adopted*, 2020 WL 5106680 (M.D. Fla. Aug. 31, 2020).  As such, the ALJ's step-five finding is not supported by substantial evidence.

Although issued prior to the Eleventh Circuit's ruling in *Goode*, the decisions in *Griffin*, *supra*, and *Smith v. Berryhill*, 2018 WL 2227225 (N.D. Fla. Apr. 12, 2018), *report & recommendation adopted*, 2018 WL 2225256 (N.D. Fla. May 14, 2018) bolster this conclusion.  In *Griffin*, the VE identified three occupations that the claimant could perform and, based on OES statistics, testified there were 300,000 or more jobs for the OES categories containing each of these positions.  2018 WL 3352929, at *8.  On

12

appeal to the district court, the claimant argued that these job figures were unreliable because the VE failed to account for the fact that they were based on OES categories, which encompassed more than the three occupations designated by the VE.  *Id.*

After reviewing the record, the court remanded the matter, finding that the VE failed to "reduce the numbers" to the specific jobs he identified "in the first instance." *Id*. at *10.  As a result, the court determined that substantial evidence did "not support the ALJ's reliance on the VE's testimony . . . because the VE did not substantiate how many of the identified jobs a person with [the claimant's] RFC would be able to perform."  *Id*.  The court added that, although it recognized the three categories cited by the VE "contained a large number of total jobs, it [could not] speculate that substantial evidence support[ed] the finding [that] the number of jobs [the claimant] can perform are significant."  *Id*.

Likewise, in *Smith*, the court remanded the matter "for a determination of whether there are other jobs, as opposed to categories of jobs, in the national economy" where the VE's job numbers appeared to be premised on OES groups that included more than one DOT position.  2018 WL 2227225, at *7–8.  In response to the government's argument that the plaintiff could perform one of these occupations—that of cuff folder—included in one OES group, the *Smith* court stated:

> The problem, as plaintiff points out, is the VE failed to identify the number of cuff folder positions available in the national economy. Instead, she testified to the number of jobs available in the OES category

that includes the position of cuff folder.  *Although there may well be ample cuff [f]older jobs—and even additional jobs within that OES category—plaintiff can perform, the VE did not testify to that fact.  The ALJ's finding plaintiff could perform other jobs in the national economy based on the VE's testimony regarding the cuff folder position thus is not supported by substantial evidence in the record.*

*Id.* at *8 (emphasis added).

As in *Goode*, *Griffin,* and *Smith*, the job figures the VE supplied at the hearing and upon which the ALJ subsequently relied were not linked to specific positions but to a group of jobs.  Remand is therefore warranted.

In an effort to avoid this determination, the Commissioner maintains that the reasoning in *Goode*, *Griffin,* and *Smith* does not apply in this case because the Plaintiff failed to challenge the VE's job numbers at the administrative level.  (Doc. 18 at 35; Doc. 22).  While there is decisional authority to support this type of argument as a general matter, such a contention is unavailing here.

In *Goode*, the court rejected a similar assertion by the Commissioner that plaintiff's counsel in that action failed to properly question the VE during the administrative hearing.  In doing so, the court noted that "[t]his is not a case in which the claimant failed to challenge or question the [VE's] methodology or job numbers" and cited with approval the Ninth Circuit's decision in *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017).  966 F.3d at n.3.  In *Shaibi*, the Ninth Circuit held that "[i]t is enough [for a claimant] to raise the job numbers issue in a general sense before the

ALJ" by, among other means, "inquiring as to the evidentiary basis for a VE's estimated job numbers." *Id.* (alterations omitted).

In this case, as noted above, Plaintiff's counsel did, in fact, question the VE at the hearing on the job numbers issue, and counsel's questioning revealed the flaw in the VE's use of statistical groups rather than the specific DOT occupations the VE identified. (R. 66–67). In addition, the Plaintiff continued to pursue this issue before the Appeals Council. (R. 347–48). As such, I find that—although perhaps not as robust a challenge as presented by the claimant in *Goode*—the Plaintiff sufficiently raised the matter at the administrative level, and the Commissioner was thus required to address it. The fact that he did not requires reversal.

## B.

In light of the above, I need not resolve the Plaintiff's remaining claims of error. *See Demench v. Sec'y of Dep't of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that, where remand is required, it may be unnecessary to review other issues raised). I do so, however, in the interest of completeness.

The Plaintiff's second challenge regarding the hypothetical posed to the VE is two-fold: (1) the ALJ failed to account for the medical opinion offered by a state agency reviewing physician, Dr. Jesse Palmer, who determined that the Plaintiff was

limited to occasional pushing/pulling with her right lower extremity; and (2) the ALJ's analysis did not address the Plaintiff's allegedly diminished intellectual capabilities, including her limited ability to conduct mathematical calculations. (Doc. 18 at 16–19). While the second of these arguments does not have merit, the first does.

In reviewing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).[5] Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel*, 631 F.3d at 1178–79 (quoting 20 C.F.R. § 404.1527(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, an ALJ must assess: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) the degree to which the doctor's

---

[5] Although this regulation has been amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. *See* 20 C.F.R. § 416.920c. Because the Plaintiff submitted her application in June 2016, the prior version of the regulation is controlling in this action.

opinion is consistent with the record as a whole; and (5) the doctor's area of specialization.  20 C.F.R. § 416.927(c).  While an ALJ is required to consider each of these factors, he need not explicitly address them in his decision.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians.  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)–(2)).  Treating doctors' opinions are entitled to the most deference, *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)), while the opinions of non-examining physicians are generally afforded the least weight, *see Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam).  In the end, irrespective of the nature of their relationship with a claimant, an ALJ "is free to reject the opinion of *any* [doctor] when the evidence supports a contrary conclusion."  *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam) ("[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding.").

State agency medical consultants—like Dr. Palmer—are considered experts in the Social Security disability evaluation process, and their findings of fact regarding the nature and severity of a claimant's impairments therefore "must be treated as

expert opinion evidence of non-examining sources."  Soc. Sec. Ruling (SSR) 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996).  When assessing the weight to accord state agency consultants' opinions, SSR 96-6p provides:

> [T]he opinions of State agency medical . . . consultants and other program physicians . . . can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence[,] including any evidence received at the [ALJ] and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical . . . consultant or other program physician. . . .

1996 WL 374180, at *2.

Here, Dr. Palmer analyzed the Plaintiff's claim file at the reconsideration level in September 2016.  (R. 86–91).  Based upon his review, Dr. Palmer opined that the Plaintiff could perform light exertional work subject to certain additional postural and manipulative limitations, such as a restriction to frequent pushing and pulling (including operation of hand and/or foot controls) with her left upper extremity.  (R. 87-91).  Pertinent to the Plaintiff's second claim of error, Dr. Palmer also opined that the Plaintiff was limited to occasional pushing and pulling with her right lower extremity due to "severe OA [osteoarthritis]."  (R. 87).

In addressing Dr. Palmer's analysis in his decision, the ALJ stated:

> [Dr. Palmer] opined that the claimant could perform . . . light exertional work with additional postural and manipulative limitations (namely,

limited pushing/pulling and reaching overhead with the left upper extremity).  The undersigned affords this opinion some weight, as it [is] consistent with the objective medical evidence showing that the claimant received conservative treatment for her physical impairments along with essentially normal results on physical exams.  However, [Dr. Palmer] did not adequately consider the claimant's right shoulder impairment . . . Therefore, the opinion is not entirely persuasive, and is not entitled to full weight.

(R. 26).

As the Plaintiff correctly points out and as the Commissioner concedes, the ALJ did not mention, much less evaluate, Dr. Palmer's opinion regarding the Plaintiff's right lower extremity restriction.  Indeed, the ALJ omitted any discussion of Dr. Palmer's opinion on this issue.[6]  As such, it is not at all clear that the ALJ considered such a limitation and rejected it.

The Commissioner's contention that Dr. Palmer's assessment of the Plaintiff's ability to push and pull with her right leg was properly discounted is unavailing.  (Doc. 18 at 21–22).  While the Commissioner endeavors to show that there are purported inconsistencies between Dr. Palmer's opinion and the records from the Plaintiff's treating orthopedist, Ronald White, M.D., the ALJ did not perform any such analysis in his decision.  The Court must review the ALJ's evaluation of Dr. Palmer's opinion based upon what the ALJ said, not upon the Commissioner's post-hoc rationalization. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871–72 (11th Cir. 2012) (per

---

[6] Dr. Palmer's opinion is the only medical opinion that the ALJ explicitly weighed.  (R. 26).

curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same) (citing *Owens*).

In sum, given the fact that Dr. Palmer provided a specific opinion on the Plaintiff's limited abilities to push and pull with her right lower extremity that the ALJ appears to have overlooked, and given the lack of any contrary medical opinion, I cannot find that the ALJ's decision to afford "some weight" to Dr. Palmer's evaluation is based on substantial evidence.  Accordingly, the ALJ should also address this aspect of the medical record on remand.[7]

### C.

As referenced previously, the Plaintiff's final claim of error concerns the Appeals Council's decision to change her established onset date from April 15 to June 15, 2018.  (Doc. 18 at 9–13).  Because this challenge arises from the application of the Medical-Vocational Guidelines (the grids) and the SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX), some background regarding these agency rules and guidelines is necessary.

---

[7] I am not similarly persuaded by the Plaintiff's assertion that the ALJ was obligated to address her purportedly limited mental faculties.  Nonetheless, the ALJ will be required to evaluate the entire record on remand and may find cause to assess this issue as well.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (noting that on remand the ALJ must reassess the entire record).

Promulgated by the Commissioner, the grids establish the types and numbers of available jobs in the United States. *Heckler v. Campbell,* 461 U.S. 458, 461 (1983). They "consist of a matrix of the four factors identified by Congress" as relevant to the disability determination—"physical ability, age, education, and work experience— and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id*. at 461–62 (footnotes omitted). If a claimant's circumstances coincide with the criteria listed in a rule, that rule directs a conclusion as to whether or not the claimant is disabled. 20 C.F.R. § 416.969.

Of relevance here, the grids divide claimants into three age categories: younger persons (those persons under age 50), persons closely approaching advanced age (those persons age 50–54), and persons of advanced age (those persons age 55 or older). 20 C.F.R. § 416.963(c)–(e). Although age in this context is defined in chronological terms, *id.* at § 416.963(a), when a claimant is within a "few days" or a "few months" of reaching an older age category (known as a "borderline situation"), an ALJ has discretion to use that older age category, *id.* at § 416.963(b). It is generally accepted that a borderline situation occurs when a claimant is within six months of reaching the next age classification. *See, e.g., Dubyna v. Colvin*, 2014 WL 4660363, at *8 (M.D. Fla. Sept. 17, 2014) ("Although there is no bright line rule for how many months is borderline, the predominant view is that six months from the next age category is the

outer limit."); Program Operations Manual System (POMS ) DI 25015.006 ("We do not have a more precise programmatic definition for the phrase 'within a few days to a few months.' . . .   Usually, we consider a few days to a few months to mean a period not to exceed 6 months.").   The weight of authority in this Circuit is that, when presented with a borderline case, the ALJ is obligated to identify and address the matter.   *See Robles v. Berryhill*, 2019 WL 5874056, at \*5 (M.D. Fla. July 2, 2019), *report & recommendation adopted sub nom. Robles v. Comm'r of Soc. Sec.*, 2019 WL 3543703 (M.D. Fla. Aug. 5, 2019) (citations omitted).

Like the grids, the HALLEX provides guidance to ALJs employing the borderline age rules.   The HALLEX directs adjudicators faced with this issue to apply a two-part test: (1) determine whether the claimant's age is within a few days or a few months of a higher age classification; and (2) if so, assess whether using the higher age category would result in a disability finding.   HALLEX I-2-2-42(B).   "If the answer to both parts of the test is 'yes,' a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category."   *Id.*   The HALLEX further mandates that "[i]f all of the factors support using the higher age category, the ALJ will find the claimant disabled with an established onset date corresponding to the . . . date of adjudication."   HALLEX I-2-2-42(C)(4).

In this case, the ALJ found that the Plaintiff was disabled as April 15, 2018, under grid rule 202.01. (R. 28). That rule dictates a finding of disabled where an individual is fifty-five years old, has limited or less education, and has unskilled or no past relevant work. 20 C.F.R. Part 404, Subpt. P, App'x 2, § 202.00(c) and Table No. 2. Even though the Plaintiff did not turn fifty-five years old until October 14, 2018 (R. 255), the ALJ found her to be disabled beginning on April 15, 2018 (six months before her birthday), because the Plaintiff's case involved a borderline grid rule situation and additional adverse vocational factors warranted application of the borderline grid rules. (R. 27–28).

On review, the Appeals Council agreed with the ALJ that the borderline grid rules applied but found that the Plaintiff became disabled as of the date of the ALJ's decision—i.e., on June 15, 2018—and not as of April 15, 2018. (R. 6, 16, 29). The Appeals Council explained that, as noted above, HALLEX I-2-2-42 directs that the ALJ "find the claimant disabled with an established onset date corresponding to *the date of adjudication*, which in this case is the [ALJ's] decision date of June 15, 2018." (R. 6) (emphasis added).

The Plaintiff now argues that the Appeals Council's application of this HALLEX provision is arbitrary and constitutes bad policy, and that neither the ALJ nor the Appeals Council was obligated to follow it. (Doc. 18 at 12–13). I find no merit to this contention. Regardless of what the Plaintiff may think of the rationale behind

HALLEX I-2-2-42, she offers no legal or factual basis to overturn the Appeal Council's decision to establish a June 15, 2018, disability onset date as required by the agency's own guidelines.  *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) ("As a general rule, where the rights of individuals are affected, an agency must follow its own procedure, even where the internal procedures are more rigorous than otherwise would be required.").[8]

IV.

In light of my findings in sections A and B above, I recommend:

1.     The Commissioner's decision be reversed and remanded for further proceedings.

2.     The Clerk of Court be directed to enter Judgment in the Plaintiff's favor and to close the case.

3.     The Court reserve jurisdiction on the matter of attorney's fee and costs pending further motion.

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Respectfully submitted this 15th day of January 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies to:
Honorable James S. Moody, Jr., Senior United States District Judge
Counsel of record